UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SANDRA BICKFORD,                )
                                )
    Plaintiff,                  )
                                )
    v.                          )    Civil Action No. 10-2323 (PLF)
                                )
GOVERNMENT OF THE UNITED STATES,)
                                )
    Defendant.                  )
_____)

OPINION

This matter is before the Court on the motion of the government of the United States to dismiss the complaint of *pro se* plaintiff Sandra Bickford under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Also pending are three motions filed by Ms. Bickford: (1) a motion for an order of emergency protection to enjoin unnamed federal employees from, among other things, engaging in surveillance of Ms. Bickford and her minor child and interfering with this case; (2) a motion to obtain all medical and legal records that pertain to Ms. Bickford and her minor child; and (3) a motion for the appointment of, among others, legal counsel. Upon consideration of the parties' papers, the relevant legal authorities, and the entire record in this case, the Court will grant the government's motion to dismiss, will deny as moot Ms. Bickford's motion for an emergency order of protection, will deny Ms. Bickford's motion to obtain all medical and legal records, and will deny Ms. Bickford's motion for appointment of, among others, legal counsel.[1]

---

[1] The papers reviewed in connection with the pending motions include: the plaintiff's complaint ("Compl.") [Dkt. No. 1]; the plaintiff's motion to obtain medical and legal records ("Records Mot.") [Dkt. No. 2]; the plaintiff's motion for appointment of needed resources ("Resources Mot.") [Dkt. No. 3]; the plaintiff's motion for an emergency order of protection ("Protection Mot.") [Dkt. No. 6]; the government's motion to dismiss and opposition to the plaintiff's motion for an emergency protective order ("MTD") [Dkt. No. 8]; the plaintiff's answer to the defendant's motion to dismiss ("Opp. to MTD") [Dkt. No. 11]; and the government's reply ("MTD Reply") [Dkt. No. 13].

## I. BACKGROUND

Plaintiff Sandra Bickford, proceeding *pro se*, has filed suit against the government of the United States. See Compl. at 1. Ms. Bickford alleges that, from 2001 to the present, certain federal and local Virginia officials — acting at the behest of Russell Miller, Ms. Bickford's ex-husband — have conspired and engaged in the systematic torture, harassment, and surveillance of Ms. Bickford and her minor child. See id. at 1-6. Ultimately, the goal of this alleged broad-ranging conspiracy was and is to isolate and remove Ms. Bickford from society; it began with an illegal medical operation performed on Ms. Bickford on June 6, 2001. See id. ¶ 1.

As Ms. Bickford describes it, before June 6, 2001, Mr. Miller "on multiple occasions warn[ed] of his power to cause her harm due to his 'connections.'" Compl. at 3. Such "connections" allegedly included Curtis Richardson — Mr. Miller's first cousin who "was an employee of [the] federal government," and worked for either the Federal Bureau of Investigation, the Central Intelligence Agency, or the Secret Service — as well as various local government officials of Tazewell County, Virginia. Id.; see id. ¶ 1.[2] Mr. Miller eventually sent Ms. Bickford a message stating that "they had a plan for her that was going to blow her mind[.]" Id. at 3.

> Ms. Bickford alleges that on June 6, 2001,
>
> individual(s) representing the government of the United States recklessly and maliciously used the power and influence of their position to assist the Virginia Department of Corrections, a Tazewell County Virginia Judge, the Tazewell County Virginia Sheriff's Deparment, and a medical doctor in the medical implantation of devices [in Ms. Bickford] to be used for surveillance, and to remove [Ms. Bickford] from society and to isolate her in order to cover up her future abuses . . . through distortion of normal auditory perception.

---

[2] Ms. Bickford's opposition suggests that Mr. Richardson in fact worked (or perhaps still works) for the CIA. See Opp. to MTD at 1-3.

2

Compl. ¶ 1. Ms. Bickford "was sedated . . . , never given an opportunity to consent to the medical procedures which took place, and also never told about the alterations done to her physical body." Id. ¶ 3.

At some point, however, Ms. Bickford "became cognizant of the occurrences of 2001." Compl. ¶ 6. And beginning in 2007, "representatives of the United States Government have actively used the power of their positions to cover up what was done to [her] through" various means, including: (1) blocking Ms. Bickford from receiving "adequate medical treatment," id. ¶ 6; (2) blocking Ms. Bickford from receiving "needed legal assistance," id.; (3) blocking Ms. Bickford "from receiving protection from local authorities when victimized by criminal acts by misrepresenting her as mentally unstable and a substance abuser," id. ¶ 7; and (4) blocking Ms. Bickford from "accessing all of her medical records and any legal records which may reveal the truth of their activities and be used as evidence against them." Id. ¶ 8. Ms. Bickford alleges that these unspecified officials "went to great lengths to prove the power of their positions by applying psychological, cognitive, and physical torture techniques." Id. at 4. Such alleged "torture techniques" include tampering with the medical treatment of Ms. Bickford and her minor child, altering medical records, and engaging in various types of harassment. Id.

On December 29, 2010, Ms. Bickford filed suit in this Court naming only the United States government as a defendant. Although not entirely clear, it appears that she makes claims under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Compl. at 5.[3] She requests $10 million in punitive damages, as well as various forms of injunctive relief. See id. at 6.

---

3 Ms. Bickford's complaint also references "Article XI of the Constitution of the United States" and the Third Amendment. See Compl. at 5.

3

On January 20, 2011, Ms. Bickford filed a motion requesting "legitimate copies of all medical records, legal records and legal documents which pertain to her and her minor child regardless of their classification." Records Mot. at 1. Also on January 20, 2011, Ms. Bickford filed a motion requesting that the Court appoint for her (1) legal counsel; (2) a team of "non-biased federal investigators . . . to immediately take action to identify past and ongoing behavior and incidents which violate the constitutional rights of [Ms. Bickford] and her minor child"; and (3) "[a] team of qualified humane medical professionals . . . needed to identify and remove all distortion products and inanimate objects from the bodies of both [Ms. Bickford] and her child[.]" Resources Mot. at 1. Then, on March 9, 2011, Ms. Bickford requested that the Court enter an order assigning U.S. Marshals to her for protection and directing

> ALL federal employees operating with the intention of surveillance, blocking access to needed resources and services including needed medical treatment, interfering with this lawsuit, facilitating ongoing isolation, facilitating ongoing torture, and facilitating ongoing secrecy . . . to keep a distance of at least one mile away from [Ms. Bickford] and her minor child.

Protection Mot. at 1 (emphasis in original).

In response, on April 4, 2011, the government filed a motion to dismiss Ms. Bickford's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See MTD at 1. The Court then issued an Order informing Ms. Bickford that any failure to respond to the government's motion carries with it the risk that her complaint will be dismissed and ordering Ms. Bickford to respond to the government's motion by July 20, 2011. See Order at 1-2, June 20, 2011. In accordance with that Order, Ms. Bickford filed her response on July 19, 2011. The government has filed its reply, and this matter now is ripe for decision.

## II. LEGAL STANDARD

### *A. Rule 12(b)(1)*

Rule 12(b)(1) of the Federal Rules of Civil Procedure presents a threshold challenge to the Court's jurisdiction. Curran v. Holder, 626 F. Supp. 2d 30, 32 (D.D.C. 2009). The Court therefore is "obligated to determine whether it has subject-matter jurisdiction in the first instance[.]" Agrocomplect, AD v. Republic of Iraq, 524 F. Supp. 2d 16, 21 (D.D.C. 2007). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945 (2009). Indeed, "[f]ederal courts have a special obligation to determine whether they have subject matter jurisdiction, even when the parties have not raised any jurisdictional questions themselves." Fay v. Perles, 484 F. Supp. 2d 6, 9 (D.D.C. 2007).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. Curran v. Holder, 626 F. Supp. 2d at 32-33. Although a *pro se* complaint is held to a less stringent standard than other complaints, id. at 33, "even a *pro se* plaintiff . . . bears the burden of establishing that the Court has subject matter jurisdiction." Price v. College Park Honda, Civil Action No. 05-0624, 2006 WL 1102818, at *6 (D.D.C. Mar. 31, 2006) (citing Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993); District of Columbia Ret. Bd. v. United States, 657 F. Supp. 428, 431 (D.D.C. 1987)). In deciding whether subject matter jurisdiction exists, the Court may consider the complaint alone or "may consider materials beyond the pleadings[.]" Price v. College Park Honda, 2006 WL 1102818, at *6 (citing Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992)).

It is established that federal courts "'are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit.'" Curran v. Holder, 626 F. Supp. 2d at 33 (quoting Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)); see also Tooley v. Napolitano, 586 F.3d 1006, 1009 (D.C. Cir. 2009); Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994). "Thus, such claims must be dismissed pursuant to Rule 12(b)(1)[.]" Riles v. Geithner, 693 F. Supp. 2d 1, 3 (D.D.C. 2009); see Curran v. Holder, 626 F. Supp. 2d at 33. To be dismissed on this ground, the claims in question must "be flimsier than 'doubtful or questionable' — they must be 'essentially fictitious.'" Best v. Kelly, 39 F.3d at 330 (quoting Hagans v. Lavine, 415 U.S. at 536-37). Claims that are "essentially fictitious" include those that allege "'bizarre conspiracy theories, . . . fantastic government manipulations of [the] will or mind, [or] any sort of supernatural intervention.'" Riles v. Geithner, 693 F. Supp. 2d at 3 (quoting Best v. Kelly, 39 F.3d at 330) (alteration in original).

*B. Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, Bell Atlantic Corp. v. Twombly,

550 U.S. at 555, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. at 1949 (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See id. at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III. DISCUSSION

Ms. Bickford alleges the existence of a broad-ranging conspiracy directed by her ex-husband and perpetrated by, among others, certain federal and local officials. See Compl. at 1-6. She asserts that on June 6, 2001, some "individual(s) representing the government of the United States" provided unspecified assistance to certain local officials so that a medical doctor could implant tracking devices in Ms. Bickford. Id. ¶ 1. Since that time, she says, these federal officials have conspired and engaged in systematic torture, harassment, and surveillance of Ms. Bickford and her minor child in order to cover up the June 6, 2001 operation and isolate and remove Ms. Bickford from society. See id. at 1-6. As discussed, it appears that Ms. Bickford

7

makes claims against the United States government under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See id. at 5. She requests $10 million in punitive damages, as well as various forms of injunctive relief. See id. at 6.

In its motion to dismiss, the government argues that Ms. Bickford's claim for money damages for alleged constitutional violations is barred by sovereign immunity. See MTD at 1. The government argues further that if any of Ms. Bickford's claims are not barred by sovereign immunity, they are patently insubstantial and warrant dismissal under Rule 12(b)(1) or 12(b)(6). See id. The Court agrees with the government and concludes that all of Ms. Bickford's claims should be dismissed under Rule 12(b)(1), except for a possible Privacy Act or Freedom of Information Act claim that will be dismissed under Rule 12(b)(6). Ms. Bickford's complaint therefore will be dismissed in its entirety.

*A. Claims Related to Torture, Surveillance, and Harassment*

Ms. Bickford's claims for money damages for alleged constitutional violations are barred by sovereign immunity. It is established that the United States "may be sued only insofar as it consents to suit. In all other cases, the federal government enjoys sovereign immunity from suit." Davis v. Mukasey, 669 F. Supp. 2d 45, 49 (D.D.C. 2009) (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994)). In other words, "sovereign immunity bars a suit for money damages against the federal government unless there is a specific wavier of such immunity" by an act of Congress. Strunk v. United States Dep't of Commerce, Civil Action No. 09-1295, 2010 WL 960428, at *3 (D.D.C. Mar. 15, 2010); see Roum v. Bush, 461 F. Supp. 2d 40, 45 (D.D.C. 2006). "If sovereign immunity has not been waived [by Congress], federal courts lack subject matter

jurisdiction over the claims." Gust v. United States, Civil Action No. 10-0252, 2011 WL 2176905, at *2 (D.D.C. June 6, 2011).

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., "effects a broad waiver of sovereign immunity from lawsuits for money damages." Schnitzer v. Harvey, 389 F.3d 200, 202 (D.C. Cir. 2004). Although Ms. Bickford's complaint does not mention this statute, because she is proceeding *pro se* the Court will construe her complaint to allege claims under the FTCA. See Roum v. Bush, 461 F. Supp. 2d at 46.[4] Nevertheless, Ms. Bickford's constitutional claims for money damages fail for two independent reasons. First, she does not assert that she has exhausted the necessary administrative remedies under the FTCA, "which is a mandatory prerequisite to bringing such a claim in court." Epps v. U.S. Attorney General, 575 F. Supp. 2d 232, 238 (D.D.C. 2008). Second, the FTCA "does not waive sovereign immunity for constitutional torts" as alleged by Ms. Bickford in this case. Id.; see also Struck v. United States Dep't of Commerce, 2010 WL 960428, at *3 (citing Clark v. Library of Congress, 750 F.2d 89, 102-04 (D.C. Cir. 1984)); see FDIC v. Meyer, 510 U.S. at 478 ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."). The Court therefore concludes that it lacks subject matter jurisdiction over Ms. Bickford's constitutional tort claims for money damages.

Ms. Bickford, however, also requests various forms of injunctive relief. She asks that the Court (1) "immediately intervene to protect . . . [her] legal rights . . . and [those of] her

---

[4] It cannot be construed as a so-called Bivens claim, see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), because such a claim can be brought only against federal agents, not against the United States or federal agencies. FDIC v. Meyer, 510 U.S. at 484-86.

9

minor child"; (2) appoint and order a medical provider to remove from Ms. Bickford's body "all foreign objects, being used as surveillance and torture devices"; and (3) "alert the public of the occurrences of the case in order that they may be aware of their own risk for this type of victimization." Compl. at 6. As a general matter, a claim for injunctive relief to prevent alleged violations of constitutional rights is not barred by sovereign immunity. See, e.g., Thomas v. United States, Civil Action No. 09-2327, 2011 WL 1602415, at *3 (D.D.C. Apr. 29, 2011) (citing Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001)). Nevertheless, Ms. Bickford's injunctive claims — all of which arise from her allegations of government torture, surveillance, and harassment — are the type of "'bizarre conspiracy theor[ies]'" that warrant dismissal under Rule 12(b)(1). Curran v. Holder, 626 F. Supp. 2d at 33 (quoting Richards v. Duke Univ, 480 F. Supp. 2d 222, 232 (D.D.C. 2007)); see Roum v. Bush, 461 F. Supp. 2d at 46.

Here, the gist of Ms. Bickford's complaint is that her ex-husband directed various federal and local officials — including his cousin, who was a federal government employee working for either the FBI, the CIA, or the Secret Service, certain unnamed federal employees, and certain unnamed Tazewell County employees — to engage in the systematic torture, harassment, and surveillance of Ms. Bickford and her minor child. See Compl. at 1-6. Among other things, some or all of these individuals allegedly (1) implanted tracking devices in Ms. Bickford without her consent for the purpose of surveillance and to isolate and remove her from society, id. at 1; (2) altered Ms. Bickford's medical records; (3) had "pretend medical testing performed"; (4) prevented "medical providers [from using] prevention of pain procedures in the process of medical testing"; (5) controlled Ms. Bickford's medical treatment; (6) interfered with her minor child's medical treatment; and (7) "censured" and otherwise interfered with Ms. Bickford's mail "with the goal of confusion." Id. at 6.

Where, as here, a plaintiff "offers only 'a laundry list of wrongful acts and conclusory allegations to support her theory of a conspiracy,'" such allegations are "'insufficient to allow the case to go forward.'" Curran v. Holder, 626 F. Supp. 2d at 34 (quoting Richards v. Duke Univ., 480 F. Supp. 2d at 233. Nor do the exhibits attached to Ms. Bickford's complaint even arguably support Ms. Bickford's allegations. Although the Court is mindful that a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," Brown v. District of Columbia, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (internal quotations and citation omitted), the Court concludes that Ms. Bickford's unsupported allegations of "'bizarre conspiracy theories'" involving "'fantastic government manipulations'" are essentially fictitious and thus will be dismissed under Rule 12(b)(1). Riles v. Geithner, 693 F. Supp. 2d at 3 (quoting Best v. Kelly, 39 F.3d at 330); see also Tooley v. Napolitano, 586 F.3d at 1010 (citing Curran v. Holder, 626 F. Supp. 2d at 33-34; Lewis v. Bayh, 577 F. Supp. 2d 47, 54-55 (D.D.C. 2008); Delaine v. United States Postal Serv., Civil Action No. 05-1751, 2006 WL 2687019, at *2 (D.D.C. Sept. 19, 2006)).[5]

### B. Privacy Act or Freedom of Information Act Claim

Ms. Bickford alleges in her complaint that certain representatives of the federal government "have used their authority and the power of their position to block [her] from accessing all of her medical records and any legal records which may reveal the truth of their

---

[5] As discussed, Ms. Bickford filed a motion for an emergency order of protection arising out of her allegations of surveillance and harassment. See Protection Mot. at 1. Because the Court has concluded that those allegations are essentially fictitious and thus will dismiss such claims for lack of subject matter jurisdiction, the Court will deny as moot Ms. Bickford's motion for an emergency order of protection.

activities and be used as evidence against them." Compl. ¶ 8. And Ms. Bickford since has filed a motion requesting that she be "permitted legitimate copies of all medical records, legal records and legal documents which pertain to her and her minor child regardless of their classification." Records Mot. at 1. Ms. Bickford's complaint and her related motion do not reference the Privacy Act, 5 U.S.C. § 552a, or the Freedom of Information Act. 5 U.S.C. § 552. Nevertheless, insofar as Ms. Bickford's complaint could be construed to make a claim under either statute, such a claim will be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

The Privacy Act provides that "an individual may request 'access to his record or to any information pertaining to him which is contained in the system' and 'have a copy made . . . in a form comprehensible to him.'" Crummey v. Social Sec. Admin., Civil Action No. 10-1560, 2011 WL 2580291, at *9 (D.D.C. June 30, 2011) (quoting 5 U.S.C. § 552a(d)(1)) (alteration in original). Similarly, the FOIA "requires an agency to make 'records promptly available to any person' in any 'readily reproducible' format upon receiving a request 'reasonably describ[ing] such records.'" Id. (quoting 5 U.S.C. § 552(a)(3)(A)-(B)) (alteration in original).

Prior to obtaining judicial review under the Privacy Act or the FOIA, however, a plaintiff ordinarily must exhaust his or her administrative remedies by filing a request with the applicable federal government agency and appealing any adverse determination administratively. See, e.g., Henderson v. Rice, Civil Action No. 08-1907, 2008 WL 4809129, at *1 & n.1 (D.D.C.

---

[6] The government did not address this issue in its motion to dismiss. The Court, however, may act *sua sponte* under Rule 12(b)(6) where, as here, "'the plaintiff cannot possibly win relief.'" Wilson v. Obama, 770 F. Supp. 2d 188, 191 (D.D.C. 2011) (quoting Best v. Kelly, 39 F.3d at 331).

Nov. 5, 2008); see also Banks v. Lappin, 539 F. Supp. 2d 228, 234-35 (D.D.C. 2008). Because there is no indication in Ms. Bickford's complaint (or in her motion) that she has ever submitted a request for records to *any* government agency, the Court will dismiss Ms. Bickford's Privacy Act or FOIA claim under Rule 12(b)(6) and will deny Ms. Bickford's related motion to obtain access to all medical and legal records. See Henderson v. Rice, 2008 WL 4809129, at *1 & n.1; see also Carter v. KcKain, No. 03-5248, 94 Fed. App'x 844, 2004 WL 830949, at *1 (D.C. Cir. Apr. 15, 2004); Clemmons v. U.S. Dep't of Justice, Civil Action No. 06-0305, 2007 WL 1020796, at *5 (D.D.C. Mar. 30, 2007).

### C. Motion for Appointment of Needed Resources

One final matter requires discussion. Ms. Bickford has filed a motion for "appointment of needed resources" in which she requests that the Court appoint, among others, legal counsel "to assist with this legal proceeding and the gathering of factual information[.]" Resources Mot. at 1. Ms. Bickford is not proceeding *in forma pauperis* and therefore does not qualify for appointment of counsel from the Court's Civil Pro Bono Panel. See Greer v. O'Neill, Civil Action No. 01-1398, 2003 WL 25653036, at *10 n.7 (D.D.C. Sept. 25, 2003) (citing Loc. Civ. R. 83.11). Even if she were, the Court concludes that the interests of justice do not warrant appointment of counsel or other purported needed resources since Ms. Bickford's case has no merit and will be dismissed. See 28 U.S.C. § 1915(e)(1); Loc. Civ. R. 83.11(b)(3)). Thus, the Court will deny Ms. Bickford's motion for appointment of needed resources.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the government's motion to dismiss [Dkt. No. 8], will deny as moot Ms. Bickford's motion for an emergency order of protection [Dkt. No. 6], will deny Ms. Bickford's motion to obtain all medical and legal records [Dkt. No. 2], and will deny Ms. Bickford's motion for appointment of needed resources [Dkt. No. 3].

Upon its review of the exhibits to Ms. Bickford's complaint, the Court found that Ms. Bickford filed on the public record some of her minor child's medical records. Although this case will be dismissed and removed from the docket of this Court, the Clerk of the Court will be directed to place under seal the exhibits to Ms. Bickford's complaint — Exhibits A through M — so as to preserve the privacy of Ms. Bickford's minor child.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
DATE: September 6, 2011          United States District Judge